WESTCHESTER COUNTY.—HON. OWEN T. COFFIN, SURROGATE.—
OCTOBER, 1874.

## MATTER OF HART.

*In the matter of the application to remove* HENRY W.
HART, *one of the executors, &c. of* JOHN C. HART,
*deceased.*

The whole estate consisted of realty, with an annual rental of $30,000
held by the executor in trust under the will. On an order being
made removing the executor in default of his giving a bond, with
sureties —*Held,* that the amount of the penalty of the bond required
of him was discretionary with the Surrogate.

*Held further,*—that the sureties on such a bond would not be required to
justify in double the amount of penalty.

THE facts are fully stated in the opinion.

THOMAS NELSON, *for petitioners.*

D. W. TRAVIS, *for the executor.*

THE SURROGATE.—An order was recently made in the
above matter directing the removal of the executor on
the ground that his circumstances were so precarious
as not to afford adequate security for his due adminis-
tration of the estate, unless he should give a bond with
sureties as required by the statute. He now proposes
to give such bond.

The question now to be considered is, what shall be
the amount of the penalty of the bond. Section 20, of
3 *R. S.,* 5 *Ed.,* 157, provides that in such case the Surro-
gate " shall require such person to give bond with sure-
ties, like those required by law of administrators."
By section 42, of 3 R. S. 161, it is provided that " every
person appointed administrator shall, before receiving
letters, execute a bond to the people of this state, with
two or more competent sureties to be approved by the
Surrogate, and to be jointly and severally bound. The

penalty in such bond shall not be less than twice the value of the personal estate of which the deceased died possessed."

The testator died possessed of about $7,000 of personal property, and siezed of real estate, mostly in the city of New York, valued at some $350,000, and producing an annual income of about $30,000. This real estate is held in trust by three executors, of whom said Hart is one, and they are to receive and apply these rents as directed by the will. It is further provided in the will that said Hart shall act as agent in collecting the rents, keeping the property in repair, &c. He thus acts in a double capacity as agent in receiving the rents and keeping the property insured, repaired, &c., and then he holds, and is to apply, the residue in his character as executor. Of course he may thus control the whole of the rents, as he cannot be compelled to pay over any portion to his co-executors.

The $7,000 of personal property has been used and applied in the due course of administration, and been fully accounted for on a recent accounting had before me.

I have been unable to find any case resembling this, except that of *Holmes* v. *Cock*, (2 *Barb. Ch. R.* 426). There, as here, the personal estate had all been administered, and the only duty left for the executor to perform, was to sell some real estate and distribute the proceeds, as directed by the will. The chancellor says, "the statute has not fixed the amount of the security to be given in such cases, except that it cannot be less than twice the value of the personal estate. (3 *R. R.* 157, § 20.) But security in double the amount of the proceeds of the real estate which may come into the hands of the executor, for the benefit of others, by virtue of his trust, is not unreasonable where the executor has become insolvent;

unless the amount is very large. In that case, security to a limited amount beyond the fund to be administered, should be deemed sufficient."

If, however, we are to be guided by the strict letter of the statute above quoted, then the amount of the penalty of the bond would be sufficient, if fixed at $14,000. But here the reason for the statute rule would not apply, because, at this time, there is no personal property belonging to the estate, and, following the literal language of the statute, a bond with a mere nominal penalty might be regarded as sufficient. It is perfectly obvious, however, that the object of the statute, in requiring an executor, in a case like this, to give a bond, is to secure those interested in the estate from probable loss. It will be observed that the language used in the statute is that "the penalty of the bond *shall not be less* then twice the value of the personal estate," &c. In the other direction there is no limit. It may be ten times the value. Here no sale of real estate is in question, as in the case of *Holmes* v. *Cock (supra)*, but only the renting. The rental, as stated, is about $30,000 annually: the beneficiaries who are interested for life are all young; and the rents to be received by the executor will probably amount to several hundreds of thousands of dollars. It would be oppressive to require the executor to give a bond in a penalty double the amount which, by a calculation based on the annuity table, will be likely to come into his hands. The amount of the penalty of the bond is discretionary, in such cases, with the Surrogate. In fixing it in this matter, as in every other like case, the fact should not be lost sight of, that the end to be attained is to secure the estate against loss. Taking into consideration the power possessed, by any person interested, of calling upon the executor, at any time, and as frequently as the exigency of the case may require, to

render his account to the court, I shall deem it safe to accept a bond in the penalty of $50,000. It is true this is not quite double the amount of the annual rents, but even this is a large sum, and amply sufficient, in my judgment, under the circumstances, for the protection of those interested.

The penalty of the bond is accordingly fixed at that sum.

---

Within the time limited by statute, a bond was presented, in pursuance of the foregoing decision, and the counsel for the petitioners attended before the Surrogate pursuant to notice, to examine the proposed sureties touching their competency. These sureties, some six in number, justified in different sums, aggregating $65,000. It was then claimed that the bond was insufficient for the reason that the sureties had not justified in the sum of $100,000, being double the amount of the penalty. The counsel for the executor insisted that a justification to the extent of the penalty of the bond was alone sufficient.

THE SURROGATE.—The statute is silent on the subject, merely requiring "two or more competent sureties to be approved by the Surrogate." I see no reason why the amount to be secured should require sureties who could justify in quadruple that sum. In the case of *Bennett* v. *Byrne* (2 *Barb. Ch.* 1,) the Chancellor held that a general guardian should give a bond in a penalty double the value of the property, &c., of the infant, with sureties, and the Surrogate should require the sureties to justify in at lease the amount of the penalty of the bond; and he remitted the proceedings in that matter to the Surrogate, with directions to take a bond in a certain penal sum, with two sufficient sureties who could

justify in the amount of the penalty. He does not say each should so justify, but, in effect, the two together. It is true, the statute provides that the Surrogate shall require of the guardian, a bond to the minor, with "sufficient *security*" to be approved by him in a penalty double the amount of the personal estate, &c., while in the case of the appointment of an administrator, he shall require a bond "with two or more competent sureties."

Thus, one person in the case of the guardian, who can justify in the amount of the penalty, may be regarded by the Surrogate as "sufficient security," yet he, or the Chancellor, might exact two or more, and then, as in the case of administrators, a justification of both, or all of the sureties together, in the amount of the penalty, is sufficient.

The bond presented is therefore approved.